UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| K.R., a minor, by and through his parent and natural guardian, Kali Proctor, P.K., a minor, by and through his parent and natural guardian, Roynetter Birgans, and L.G., a minor, by and through her parent and natural guardian, Desmond Gilbert,<br><br>Plaintiffs,<br><br>v.<br><br>Duluth Public Schools Academy d/b/a Duluth Edison Charter Schools,<br><br>Defendant. | Court File No. 19-cv-00999 (DWF/LIB)<br><br>**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

DECS respectfully submits this Reply Memorandum in support of its Motion for Summary Judgment. In their attempt to manufacture issues of material fact where there are none, Plaintiffs ignore well-established standards governing motions under Rule 56. The undisputed facts demonstrate that Plaintiffs GH and LG[1] cannot establish all essential elements of their claims, thus rendering claimed factual disputes immaterial. For the reasons stated herein, Plaintiffs' claims fail and DECS is entitled to judgment as a matter of law.

---

[1] Plaintiff PK's claims were settled at the Court-ordered settlement conference occurring September 9, 2021. As such, the only remaining Plaintiffs are GH and LG.

# ARGUMENT

I.  **Plaintiffs' Failure to Establish Essential Elements of their Claims Renders Alleged Factual Disputes Immaterial**

It is well-established that summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element renders all other facts immaterial." *Sage v. Bridgestone Americas Tires Op., LLC*, 514 F.Supp.3d 1081 (D.Minn. 2021). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1976). If the evidence is merely colorable, or is not significantly probative, summary judgment is proper. *Anderson*, 477 U.S. at 249.

Only two Plaintiffs remaining in this action. In opposing summary judgment, Plaintiffs focus on minor factual issues pertaining to some of the elements of their claims but ignore other essential elements. Their hesitation to address the merits of their specific allegations, and their choice to instead focus upon alleged incidents involving non-parties, is telling. DECS has broken down each claim in detail and has demonstrated how Plaintiffs have failed to establish a prima facie case.

The substantive legal standards for each of Plaintiffs' remaining claims have significantly overlapping elements. For example, each claim requires them to establish the existence of *intentional* discrimination *because of their race*. Each claim also requires them to establish that DECS acted with deliberate indifference, and that DECS had *actual knowledge* of the alleged acts.[2]

Each of these elements carries its own evidentiary requirements, as well. Under *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999), to be actionable, racial harassment must be "so severe, pervasive, and objectively offensive" that it "effectively bars [Plaintiffs'] access to an educational opportunity or benefit." *Id.* at 650-53. To meet the "severe" requirement, an act must be more than mere juvenile behavior. "[S]imple acts of teasing and name-calling among school children," even when such comments target differences in a protected class such as race, are not enough. *Id.* "Pervasive" means systemic, widespread, and multiple incidents. *Id.* Applying the proper scope and definitions of these essential elements, Plaintiffs claims simply are not actionable.

Plaintiffs also attempt to minimize their evidentiary burden with respect to the essential element of deliberate indifference. While Plaintiffs are correct that deliberate indifference *can* be established through evidence showing that the execution of a municipality's official policy or custom has caused otherwise actionable intentional discrimination, they have not identified any such evidence here. The caselaw cited by Plaintiffs is distinguishable and unavailing. While *Pruitt v. Anderson* was within this

---

[2] Plaintiffs must prove that DECS was deliberately indifferent *to them*, not to some unidentified non-party.

3

District, it involved a motion to dismiss under Rule 12, not a motion for summary judgment under Rule 56. *Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007) is not only out-of-circuit, but also involved a failure-to-train theory. Plaintiffs concede that they are no longer pursuing such a claim. ECF No. 128, p. 39, n.37.

In addition, the evidence cited by Plaintiffs purportedly for the purpose of establishing evidence of deliberate indifference to acts of racial harassment cuts against this essential element. For example, Plaintiffs point to the numerous voluntary efforts by DECS around race and equity dating back to 2012 and claim that these efforts indicate that "DECS had actual knowledge of an ongoing racially hostile environment." ECF No. 128, pp. 44-45.

While Plaintiffs appear to argue that these voluntary efforts should be held against DECS, schools engaging in such efforts should be lauded. Any decision by the Court to the contrary would act to discourage schools from undertaking such voluntary efforts out of fear that the efforts will end up being used as a weapon against them, as Plaintiffs are attempting to do here.

Plaintiffs quote their expert witness, Naomi Khalil, and declare without support that DECS "has a consistent and unrelenting culture of biased attitudes and practices with work contrary to favorable conditions for students and families of color." ECF No. 129, p. 10; Pls. Ex. 27, p. 11. Not only has Ms. Khalil not been subjected to a *Daubert* motion, but Ms. Khalil herself acknowledges that DECS has engaged in training and education for staff regarding equity, cultural competence and racial awareness to shift

4

their hearts and minds regarding populations that have been marginalized in schools and society at large." Pls. Ex. 27, p. 22.

If the Court is going to consider expert opinions on summary judgment, it is also noteworthy that DECS' expert (who, unlike Plaintiffs' expert, works with Minnesota schools) opined that DECS has appropriate policies prohibiting racial discrimination, harassment, and bullying, and that DECS' training on cultural competency "meets or exceeds other charter schools" in Minnesota. *Second Declaration of Timothy Sullivan in Support of Defendant's Motion for Summary Judgment*, ¶2, Ex. NNN (Report of Paula Forbes J.D.). There simply is no evidence that would cause a reasonable juror to conclude that DECS had an official policy or practice of deliberate indifference to acts of unlawful racial discrimination.

Turning to the specifics of the remaining Plaintiffs and their failure to establish the essential elements of their claims:

A.  *K.R.'s Claims*

KR's claims regarding alleged racial taunting do not meet the *Davis* requirements of pervasiveness or severity. Even if there was evidence of these alleged comments being reported to DECS (there is not), a small number of isolated incidents of one young elementary school student telling another that his hair looks like a "fro" or stating "at least I'm not black" are not actionable. The same is true with a student allegedly stating "Donald Trump does not like black people."

With respect to the allegation that KR's friend used the n-word on one occasion on the bus, KR admits he did not report it to the bus driver and there is no DECS school

5

record indicating this incident was ever reported. Instead, KR relies upon double hearsay. Specifically, KR cites the notes of his treating therapist (and identified expert witness) to claim that he allegedly reported being called the n-word by his friend to DECS. ECF No. 128, p. 18 (citing Pls.' Ex. 52). This appointment occurred on August 18, 2020, nearly two years *after* his mother withdrew him from DECS' schools.

Under Rule 56, the Court may consider only evidence that is competent and would be admissible at trial. Fed. R. Civ. P. 56(e). It is well-established that inadmissible evidence, including hearsay, cannot be relied upon to defeat summary judgment. *Mays v. Rhodes,* 255 F.3d 644, 648 (8th Cir. 2001); *Firemen's Fund Ins. Co. v. Thien,* 8 F.3d 1307, 1310 (8th Cir. 1993). The therapy notes at issue do not qualify for any exception to the rule against hearsay contained in Federal Rule of Evidence 803. To be admissible under the medical diagnosis or treatment exception, statements must be relevant to diagnosis or treatment, and the statements must not have been coached. *U.S. v. Balfany,* 965 F.2d 575, 579–81 (8th Cir. 1992); *U.S. v. Provost,* 875 F.2d 172, 176–77 (8th Cir. 1989); *U.S. v. Renville,* 779 F.2d 430, 435–39 (8th Cir. 1985); *U.S. v. White,* 11 F.3d 1446, 1449–50 (8th Cir. 1993).

KR was coached into providing this statement, as his treating therapist aided/guided him in "telling his trauma story." Such a medical record, occurring well after a diagnosis and expressly documenting that KR had been coached/prompted to make the statement that is being forwarded as evidence in this case, is not entitled to the medical diagnosis or treatment hearsay exception. To hold otherwise would permit the exception to swallow the rule.

There also is no evidence to show that the "zombie" bite incident was anything other than an ordinary playground interaction between two young children. There is zero indication that it constituted an assault, let alone that the assault was based upon KR's race.

There is no evidence even hinting that the "woodchip" incident was related to KR's race. KR never harmed himself with the wood chip and DECS informed KR's mother of KR's comment the exact same date. Any claims that the situation would have been handled differently had it involved a Caucasian student are pure speculation.

With respect to the alleged face grab incident, it is noteworthy that *Davis* does not require any particular response or disciplinary action be imposed even if an incident does meet the high threshold of actionable harassment. Rather, a school must act in a manner that is not "clearly unreasonable" considering the known circumstances, and Courts are hesitant to second guess a school's determination as to the appropriate response. *Davis*, 526 U.S. at 648-49. Here, the Principal followed up on KR's allegation and interviewed all adults present. Neither adult observed anything remotely close to KR's version of events. There were no injuries to corroborate his claim that his teacher grabbed him. A meeting was held where KR and his mother were afforded an opportunity to express their side of events, and they offered to transfer KR to another classroom. There is no evidence in the record supporting a finding that this response was clearly unreasonable. Ex. NNN, pp. 11-16.

  B.  *L.G.'s Claims*

The record similarly is insufficient to satisfy the essential elements of LG's claims. With respect to the plastic toy screwdriver incident, LG was never harmed or even touched by this student. LG's classroom teacher immediately responded to the incident in an age-appropriate manner. *Id.* at pp. 24-27. This response was not clearly unreasonable.

The same is true with the alleged bus assault. The record shows that LG reported that a student punched her on the bus, but it also shows that the school nurse contacted LG's father, offered her an ice pack which was refused by LG, and that LG refused to let the nurse further inspect the alleged injury. A single incident, particularly without injury, does not satisfy the severe and pervasive requirements of *Davis*. Under these facts, with a Kindergarten student declining even an ice pack for an alleged injury caused by an assault, no reasonable juror would conclude that DECS acted clearly unreasonably under the circumstances.

Same with the alleged bullying claim. There is no credible evidence of a group of Caucasian students singling out or picking on LG, nor is there any evidence of LG being disciplined for standing up for herself. All of LG's behavioral referrals are in the record. Ex. WW. DECS' response to the group of girls (including LG) acting unkindly towards one another was not clearly unreasonable.

LG's arguments regarding the uniform policy fail. The record shows that LG was out of uniform and that a teacher directed LG to go to the nurse's office to change. The record shows that all DECS staff members are permitted to enforce all student policies,

including the uniform policy. Again, this response to a policy violation is not clearly unreasonable.

II. **Plaintiffs' Continued Reliance Upon Alleged Incidents Involving Non-Parties and Raw Statistical Data is Misplaced.**

Throughout the course of this case, Plaintiffs have appeared more interested in litigating facts related to non-parties than in developing facts and arguments related to their own claims. While DECS has consistently and properly opposed Plaintiffs' efforts to force broad and irrelevant discovery unrelated to Plaintiffs, and instead has focused upon the claims alleged by the parties to this matter, Plaintiffs accuse DECS of trying to "trivialize the harm the Plaintiffs faced by separating out each individual instance of harassment." ECF No. 128, p. 51. Addressing the actual claims being asserted and showing how *those specific claims* fail is not trivial—it is the very purpose of Rule 56.

DECS has also consistently opposed Plaintiffs' efforts to treat this matter as if it were a class action or to pursue a disparate impact theory of relief, as such claims were expressly foreclosed by the Supreme Court in *Alexander v. Sandoval*, 532 U.S. 275 (2001). Notably, Plaintiffs do not deny that they are pursuing a disparate impact theory—they embrace it. *Id.* at p. 56, n.44. These repeated attempts to assert improper theories of relief and to muddy the record with irrelevant and immaterial information must be rejected.

Plaintiffs do not begin addressing their specific claims until the end of page seventeen (17) of their brief. ECF No. 128. They once again attempt to direct the Court's attention to unrelated and irrelevant events occurring over a long period of time

9

(well before and after the time in which KR and LG attended DECS), involving unidentified students, of unidentified ages, unidentified races, at unidentified schools. *Id.* at pp. 7-15.[3] They similarly rely upon raw, statistical information pertaining either to referrals or discipline across the entire school system, and baldly claim this data establishes the existence of disproportionalities based on race.

Federal courts have expressly rejected such arguments. In *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3rd Cir. 2014), the Third Circuit rejected a plaintiff's attempt to use data regarding overrepresentation of students of color in special education programs. Affirming the district court's dismissal of the racial discrimination claims at issue, the *Blunt* court acknowledged the reality that mere "disproportionality is not per se evidence of discrimination." *Id.* at 299-301. The court further recognized that neither the IDEA nor its regulations contain any numerical criteria for determining disproportionality. *Id.* The same is the true under Title VI with respect to disproportionality in student discipline or behavioral referrals.

Similarly, in *I.S. v. Binghamton City Sch. Dist.*, --- F.Supp.3d ---, 2020 WL 5517278 (N.D.N.Y. Sept. 14, 2020), a district court recently rejected a plaintiff's attempt to use general student discipline statistics to draw unsupported conclusions regarding a claim related to student searches. The court stated:

> Although statistics from prior school years can be relevant, the statistics provided by Plaintiffs concern disciplinary actions in general; Plaintiffs provide no statistics highlighting the disparate treatment of search rates, or

---

[3] To the extent Plaintiffs attempt to use facts pertaining to former Plaintiffs GH or PK, these former parties have released DECS and have dismissed their claims with prejudice and as such these facts cannot support any claim against DECS.

10

searches themselves, among students of different races throughout the
District. Because Plaintiffs do not identify relevant statistics concerning
searches within the District, Plaintiffs have not compared their circumstances
with a similarly situated group of students.

*Id.* at *17.

Additionally, in *J.E. v. Center Moriches Un. Free Sch. Dist.*, 898 F.Supp.2d 516 (E.D.N.Y. 2012), a district court expressly rejected the plaintiff's reliance upon OCR statistics regarding student discipline. *Id.* at 549. The court held that the plaintiff "cannot proffer statistics in the OCR Report to establish the existence of this element to support their claim of a violation of equal protection, *viz.*, that they were treated disparately in this case." *Id.* at 549, n.4 (citing *U.S. v. Bass*, 536 U.S. 862, 863-4 (2002) ("raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*")).

These cases demonstrate that, while statistical information may have some limited relevance, such data must be specifically related to the type of claim at issue for it to have any value when raised in opposition to summary judgment. This is fatal to Plaintiffs' attempted use of statistics here, as neither LG or KR have identified statistical information pertaining to their specific claims (e.g., statistics regarding DECS response to bus incidents, bullying incidents, uniform policy violations, etc. between students of color and Caucasian students). Simply put, raw data pertaining to the entire student population of DECS over a long period of time is insufficient to demonstrate that DECS had actual knowledge of or acted in deliberate indifference to the alleged acts of intentional discrimination asserted by Plaintiffs.

The same is true with Plaintiffs' repeated reference to alleged incidents involving non-parties. These incidents have nothing to do with the Plaintiffs. LG only attended DECS' schools from kindergarten (2016-2017) through a small portion of first grade. She only attended one academy within one school. She only interacted with a limited number of DECS staff members/administrators. Similarly, KR only attended DECS from kindergarten through a small portion of second grade, with most of his claims arising during his first-grade year (2017-2018). Like LG, KR only attended one of DECS' schools and only interacted with a small portion of its staff. Alleged incidents involving middle school students bear no relevance upon the remaining elementary aged Plaintiffs. Even incidents involving children of similar ages are not germane to their claims, as there is no indication that any of these students were similarly situated to Plaintiffs, that they involved the same DECS decision-makers, or that they occurred within the time relevant to Plaintiffs claims. These are nothing but a red herring and an attempt to paint DECS in a negative light while simultaneously distracting the Court from the weakness of their actual claims.

Plaintiffs have made an illogical leap, and ask the Court to take the same leap, and conclude that any statistical difference *must be because of race*. DECS respectfully requests the Court to see these attempts for what they are—a distraction from the actual claims asserted by the Plaintiffs and before the Court in this case.

### III. Plaintiffs' Proposed MHRA Standard is Without Legal Support

Plaintiffs request the Court to apply a legal standard to their state law claims that is wholly without legal support. Specifically, Plaintiffs (and a proposed *Amicus Curiae*)

12

argue that the Court should interpret the MHRA in a manner wholly different than the analogous federal equivalent, which in this case is Title VI. ECF No. 128, pp. 39-41. They argue that the Court should hold, as a matter of first impression, that Plaintiffs are not required to prove that DECS had actual knowledge of an alleged hostile environment and permit Plaintiffs to proceed under a theory of disparate impact. *Id.*

As the Eighth Circuit has long recognized, the Minnesota Supreme Court has held time and again that MHRA claims are to be construed in accordance with federal precedent." *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1338–39 (8th Cir. 1996) (citing *Feges,* 483 N.W.2d 701, 710 (Minn. 1992); *Anderson v. Hunter, Keith, Marshall Co.,* 417 N.W.2d 619, 626 (Minn. 1988)).

The relevant provisions of the MHRA are directly analogous to Title VI and, in the absence of a contrary interpretation by a Minnesota court, claims under these statutes should be construed the same. *Compare* 42 U.S.C. § 2000d *to* Minn. Stat. § 363A.13. There is no significant or meaningful difference between the statutory language to justify deviating from the longstanding rule of identical interpretation.

Even the language of the MHRA limits disparate impact claims to the employment context. Minn. Stat. § 363A.28, subd. 10. Minnesota courts have expressly rejected disparate impact theories to other claims under the MHRA. *Monson v. Rochester Athletic Club*, 759 N.W.2d 60, 65 (Minn. App. 2009). Plaintiff's request for the Court to expand the scope of the MHRA should be denied.

## CONCLUSION

For the foregoing reasons, DECS respectfully requests that the Court grant summary judgment in its favor and dismiss this action with prejudice.

**RATWIK, ROSZAK & MALONEY, P.A.**

Dated: September 17, 2021      By: *s/Timothy A. Sullivan*
　　　　　　　　　　　　　　　　　Margaret A. Skelton
　　　　　　　　　　　　　　　　　Attorney Reg. No. 241003
　　　　　　　　　　　　　　　　　Timothy A. Sullivan
　　　　　　　　　　　　　　　　　Attorney Reg. No. 391526
　　　　　　　　　　　　　　　　　Jordan H. Soderlind
　　　　　　　　　　　　　　　　　Attorney Reg. No. 396718
　　　　　　　　　　　　　　　　　730 Second Avenue South, Suite 300
　　　　　　　　　　　　　　　　　Minneapolis, MN 55402
　　　　　　　　　　　　　　　　　Telephone: (612) 339-0060
　　　　　　　　　　　　　　　　　Fax: (612) 339-0038
　　　　　　　　　　　　　　　　　mas@ratwiklaw.com
　　　　　　　　　　　　　　　　　tas@ratwiklaw.com
　　　　　　　　　　　　　　　　　jhs@ratwiklaw.com

　　　　　　　　　　　　　　　　　**ATTORNEYS FOR DEFENDANT**
　　　　　　　　　　　　　　　　　**DULUTH PUBLIC SCHOOL ACADEMY**
　　　　　　　　　　　　　　　　　**D/B/A DULUTH EDISON CHARTER**
　　　　　　　　　　　　　　　　　**SCHOOLS**

RRM:　　420237